UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
BRITTANY L. BROWN,

                         Plaintiff,            11-CV-6392T

          v.                        **DECISION
                                       and ORDER**
MICHAEL ASTRUE,
Commissioner of Social Security

                         Defendant.
_____


### INTRODUCTION

Plaintiff, Brittany L. Brown("Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income("SSI"). Specifically, Plaintiff alleges that the decision of the Administrative Law Judge, Lawrence Levey ("ALJ"), denying Plaintiff's application for benefits, was not supported by substantial evidence in the record and was contrary to the applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on the grounds that the decision of the ALJ was supported by substantial evidence in the record and was in accordance with the applicable legal standards. Plaintiff opposes the Commissioner's motion, and cross-moves for judgement on the pleadings. This Court finds that

the ALJ's decision was supported by substantial evidence in the record and was in accordance with the applicable legal standards. For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.  Plaintiff's complaint is dismissed with prejudice.

## BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and SSI on January 30, 2009, alleging disability beginning on May 1, 1990 (her date of birth), under Title II and Title XVI, respectively, of the Social Security Act. Transcript of the Administrative Proceedings at 62-69 (hereinafter, "Tr."). Plaintiff alleged disability due to "spina bifida, hydrocephalus, depression, asthma and migraines."  Tr. 71.  Plaintiff's applications for DIB and SSI were initially denied on February 21, 2009, and May 12, 2009, respectively. Tr. 63-69. Plaintiff filed a timely written request for a hearing on only her SSI claim, which was held via video conference on December 13, 2010 before ALJ Lawrence Levey. Tr. 23-61. Plaintiff appeared at the hearing, with counsel, and testified. Tr. 23-61. Plaintiff's mother also testified. Tr. 23-61.

In a decision dated December 21, 2010, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 11-19. Plaintiff sought review by the Appeals

Council on February 10, 2011.  Tr. 184-85.  The ALJ's decision became the final decision of the Commissioner on June 10, 2011, when the Appeals Council denied review.  Tr. 1-3.  Plaintiff then filed this action.


**DISCUSSION**

## I.  <u>Jurisdiction and Scope of Review</u>


42 U.S.C. Section 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938).  The Court's scope of review is limited to whether or not the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the Plaintiff's claim.  See <u>Monger v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case *de novo*).  The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." <u>Lynn v. Schweiker</u>, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

3

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards, and moves for judgment on the pleadings pursuant to Rule 12(c).  Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  If, after reviewing the record, the Court is convinced that plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate.  See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  After reviewing the entire record, this Court finds that the Commissioner's decision is supported by substantial evidence in the record, and is in accordance with the applicable legal standards.  Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

II.   **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In his decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the required 5-step sequential analysis for evaluating Social Security disability benefits claims. Tr. 11-13. The 5-step analysis requires the ALJ to consider the following:

(1)   whether the claimant is currently engaged in substantial gainful activity;

(2)   if not, whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities;

(3)   if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4)   if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

(5)   if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §416.920(a)(4)(i)-(v).

In this case, the ALJ found that: (1) the Plaintiff has not engaged in substantial gainful activity since January 30, 2009 (the date of her application); (2) the Plaintiff has the following severe combination of impairments: spina bifida with hydrocephalus, hydronephrosis, headaches, asthma, depressive disorder, attention deficit disorder ("ADD"), generalized anxiety disorder, a Chiari II malformation, and obesity; (3) the Plaintiff's combination of impairments does not meet or medically equal the listed impairments in Section 404, Subpart P, Appendix 1; (4) although she had no work history, the Plaintiff has the residual functional capacity ("RFC") to perform light or sedentary work which requires lifting 20 pounds occasionally and/or 10 pounds frequently, sitting, standing and/or walking for about 6 hours in an 8-hour workday, unlimited pushing

and/or pulling machinery controls, but which does not include upward pulling of over 10 pounds, or concentrated exposure to extreme heat or cold, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, or other irritants. (5) there are a significant number of jobs in the national economy that the Plaintiff, considering her age, education, work experience, and residual functional capacity, can perform. Tr. 13-19. The ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. which this Court finds was supported by substantial evidence in the record.

## Medical History

Plaintiff was born with spina bifida, a congenital condition that has affected her in various ways since birth. As an infant, Plaintiff underwent surgical correction of the defect caused by spina bifida and a shunt placement to treat hydrocephalus and drain excess fluid from the area around her brain. Tr. 31, 202, 299. In May of 2006 a computed tomography (CT) scan showed there was no longer evidence of hydrocephalus. Tr. 188. In 2007, the findings of an MRI revealed a Chiari II malformation. Tr. 196.

As a result of the spina bifida, Plaintiff has a neurogenic bladder and diminished bowel control. Tr. 204. This requires her to catheterize herself multiple times daily although she reported to treating physician Dr. Stephen B. Sulkes in 2007 that she only catheterizes herself twice a day and was experiencing frequent

daytime wetness. Tr. 186. She also reported she was generally dry overnight. Tr. 186. Plaintiff testified that she urinates or soils herself about three times a week. Tr. 35. In May of 2008, Nurse Practitioner Cheryl Kline of the Pediatric Urology center of Strong Memorial Hospital ("Strong") reported that Plaintiff felt she was "catheterizing more consistently" and that Plaintiff "seems to be taking more responsibility for maintaining herself in a more socially appropriate continence situation." Tr. 275. In May of 2006, 2007 and 2008 an ultrasound of Plaintiff's kidneys revealed normal functioning. Tr. 195.

Plaintiff also complains of severe headaches for which she was hospitalized on several occasions. Tr. 192, 209, 291. In September of 2007, Plaintiff left school and went to Strong emergency Department for a headache evaluation. Tr. 192, 272. A shunt series revealed a kink in her shunt near her lower ribs and a possible disconnection above the right clavicle. Tr. 192. Plaintiff's mother decided to postpone the shunt revision due to potential complications. Tr. 43, 192. In May 2007, at a yearly follow up, Plaintiff reported to Dr. Sulkes an episode of transient pain at her spina bifida surgical scar, manifesting itself as a headache. Tr. 186. She stated there had been no pain before or after this isolated episode. Tr. 186. As a result of her complaints of severe headaches, Plaintiff had a follow-up appointment in the Pediatric Neurosurgery Department at Strong on May 13, 2008 by Dr. Howard J.

Silberstein who reported that Plaintiff denied "further headaches or any other symptoms of increased intracranial pressure." Tr. 272. On May 15, 2008 Plaintiff had a follow-up appointment with Dr. Sulkes, who reported no further headache episodes and stable low level myelomeningocele and shunted hydrocephalus. Tr. 273.

Dr. Harbinder Toor conducted a consultative internal medical examination on April 9, 2009. Tr. 209-14. He reported that Plaintiff's "migraine headaches and accompanying dizziness from the shunt placement and hydrocephalus can interfere with her daily physical routine." Tr. 211-12. He further opined that she should avoid irritants or other factors which can precipitate asthma symptoms. Tr. 212. During the visit, Plaintiff reported no difficulties showering or dressing, she reported that she did laundry three times a week and shopped once a week. Tr. 210. His examination revealed a mild limitation in range of motion of the cervical and lumbar spine and numbness in the back of her legs. Dr. Toor opined that her prognosis was fair. Tr. 212.

Later examinations in May 2008, May 2010 and December 2010 by treating physician Dr. Corrie Harris of Genesis Pediatrics did not reveal any back problems, such as tenderness, swelling or instability. Tr. 262-69. Dr. Harris reported Plaintiff to have a full range of motion and full strength. Tr. 262-69. Plaintiff also saw Dr. Harris regarding an injured knee, and Dr. Harris referred her to a physical therapist. Tr. 256-59.

Plaintiff also suffers from mental impairments. Plaintiff's primary care physician, Dr. Catherine Goodfellow diagnosed Plaintiff with Depression and ADD and prescribed her antidepressants (Fluoxetine 60 mg) and stimulants for her ADD (Concerta 54 mg and Strattera 80 mg). Tr. 203. Plaintiff admitted that the Concerta was helpful with some of her ADD symptoms. Tr. 188.

Consultative physician Dr. Christine Ransom examined Plaintiff on April 4, 2009. Dr. Ransom agreed with Dr. Goodfellow's previous diagnoses and treatment for moderate Major Depressive Disorder and ADD, and also identified probable borderline intellectual capacity. Tr. 215-18. Dr. Ransom recommended that she seek a psychiatric evaluation. Her prognosis was fair to good. Tr. 218. Ultimately, Dr. Ransom opined that Plaintiff would have moderate difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress. Tr. 218.

Plaintiff also alleges an anxiety disorder. In May of 2006, she reported to Dr. Sulkes that she felt anxious "much of the time" and that she was prescribed Zoloft which was not helping. Tr. 188. A year later in May 2007, Plaintiff again reported to Dr. Sulkes that she experienced anxiety. Tr. 186. Plaintiff also reported anxiety and frequent panic attacks, at least three times per week, to Dr. Harris and that her previous Prozac prescription did not help her. Tr. 257. Plaintiff testified that she is extremely anxious and

stressed and experiences panic attacks multiple times per week. Tr. 37.

Plaintiff also struggled somewhat in school. Plaintiff took special education classes and received testing accommodations such as extended time and at a location with minimal distractions. Plaintiff's test scores in 2003 through 2005 were below state standards in one or more academic subjects and below average on certain sub-tests of standardized tests. Tr. 160-74. However, her tests from the 9th through 12th grades, years 2006-2009 satisfied state standards and reached at least average levels, some even above average. Tr. 160-74. Plaintiff had an Individualized Education Plan ("IEP") for the 2008-2009 academic year which provided for testing accommodations and also acknowledged her ability to fully participate in the general education setting for normal elective classes. She also participated in adapted physical education. Tr. 161. The IEP described her as a "very capable student" who processed information at a slower rate in Social Studies but not noticeably in other subjects. Tr. 163. Her IEP attributed her academic under-performance to inconsistent work and study habits. The IEP stated Plaintiff had no social or emotional needs. Tr. 163. It also stated that she required bathroom privileges as needed. Tr. 163.

On May 5, 2009 state agency medical consultant in psychology, A. Hochberg, found plaintiff's mental impairments did not meet any listing, particularly listings 12.02 (organic mental disorders),

12.04 (affective disorders) and 12.06 (anxiety-related disorders). Tr. 232. Dr. Hochberg also found that, based on his review of the record, Plaintiff had only mild limitations in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace. Tr. 242. According to Dr. Hochberg, there was insufficient evidence of any episodes of decompensation. Tr. 242.

On the same day, Dr. Hochberg performed a Mental Functional Capacity Assessment and found Plaintiff's IQ tests to fall in the average range. Tr. 248. Dr. Hochberg also found that the evidence on file was consistent with Dr. Ransom's opinion that Plaintiff could perform simple tasks independently. Tr. 248. Based on this history, Dr. Hochberg found that Plaintiff could perform simple tasks independently, could sustain a normal workday/week, and could maintain a consistent pace to do at least unskilled work. Tr. 248. Dr. Hochberg did indicate that Plaintiff might need a position with limited interpersonal demands and contact. Tr. 248.

On November 29 and December 7, 2010, Plaintiff saw Katherine Pawlaczyk, LCSW-R, for therapy. Tr. 301-07. Plaintiff indicated environmental stressors at home and Ms. Pawlaczyk opined that Plaintiff had a decreased ability to be independent as a result of emotional symptoms. Tr. 306.

On a form dated February 26, 2009 for the New York State Office of Temporary and Disability Assistance, Dr. Catherine Goodfellow

indicated that Plaintiff had no limitation in her ability to lift and carry, stand or walk, sit, push and/or pull or any other potential limitation on work-related physical activity. Tr. 205.

However, on February 7, 2011, Dr. Goodfellow sent a letter to the Social Security Administration rescinding her previous evaluation. She stated that Plaintiff suffers from "depression, anxiety and ADD which cause significant limitations in her ability to concentrate for even short periods of time." Tr. 308. She also noted Plaintiff's frequent panic attacks and the unpredictable nature of her emotional state, which, she reported, are "difficult for her to control." Tr. 308. She concluded that Plaintiff's problems could "reasonably be expected to prevent her from being able to successfully maintain employment" and that Plaintiff "would not be able to sustain full-time competitive employment." Tr. 308. To explain her change in opinion, Dr. Goodfellow stated that to determine if a claimant is entitled to social security benefits requires a "much more thorough evaluation than we had ever had in our office" and that "there are significant issues that have since come forward." Tr. 308. However, she did not state what those new issues were.

### The Hearing Before the ALJ

Plaintiff testified that she is 20 years old and has successfully completed the 12th grade except for a senior project, on which she received a failing grade. Tr. 31. At the time of the

hearing she was working on completion of the project in order to graduate. Tr. 31. Plaintiff testified that she needs to use a catheter throughout the day as a result of her hydronephrosis. Tr. 32. She reported that she suffered from migraine headaches one to three times a week which required her to take medication and lay down. Tr. 32. She also testified that she suffers from asthma which prevents her from doing "physical things like running" and these sorts of activities, if performed, cause her asthma attacks. Tr. 32-33. Plaintiff testified that her feet are slightly turned in, for which she saw a podiatrist as a child. This condition contributed to a fall in 2006 and caused her knee to become inflamed. She stated it has been "messed up ever since." Tr. 33-34. Plaintiff also testified that she can walk about half a mile or less before she has to stop, a numerical equivalent of about 10 or 15 minutes. Tr. 34. Plaintiff testified that she urinates or soils herself around three times a week because she "does not feel it coming on" and she is only able to sleep for 4 hours at a time.

Plaintiff testified that she has about ten panic attacks per month and has suicidal thoughts. Tr. 37. She also testified that she takes Celexa for her depression but did not take medication for her anxiety. Tr. 38. She testified that she has crying spells almost every night and she finds herself taking naps or lying down during the day nearly every day. Tr. 38. Plaintiff reported that she does not read because she is not very good at it and that she is not able

to handle money herself because she is not very good at math. Tr. 40.

Plaintiff's mother testified that Plaintiff fights a lot with family members and "flies off the handle." Plaintiff's mother also testified that she stays in her room all the time. Tr. 48. She also stated that Plaintiff does not have, and never has had, many friends. Tr. 52. She also testified that Plaintiff's hygiene is not exceptional, explaining that Plaintiff will soil herself and leave the soiled clothes on the floor only to later put them back on. Tr. 49. Plaintiff's mother testified that she "could not see her holding a job because she does not listen to authority." Tr. 51.

Vocational Expert Mr. George Storasta ("VE") also testified at the hearing by telephone. Tr. 55-60. The ALJ asked the VE to assume a hypothetical individual with the same age, education, work experience, and RFC as the Plaintiff. The limitations from the RFC, which the ALJ used in the hypothetical, were those of  an individual who is capable of performing sedentary work but:

> "can only occasionally utilize her right lower extremity for pushing, pulling or operation of foot controls; the individual can only occasionally climb ramps or stairs and could only occasionally engage in balancing, stooping, kneeling, crouching and crawling; the individual is precluded from climbing ladders, ropes or scaffolds and is required to avoid concentrated exposure to temperature extremes, wetness and humidity. The individual is additionally required to avoid all exposure to excessive noise and to environmental irritants, and requires work in close proximity to lavatory facilities...this individual is limited to performing only simple, routine and repetitive tasks with only occasional changes in the work setting and any changes being gradually introduced; the individual requires a job that does not

involve interaction with the general public, and should only
occasionally or no more than occasionally have interaction
with coworkers and supervisors"

In an alternate hypothetical, the ALJ asked the VE to assume an
individual with the same limitations and is capable of no more than
sedentary exertional work. Tr. 56-60. The VE testified that jobs
such as addresser/mail sorter, surveillance system monitor and
assembler would be possible for the Plaintiff to perform of which
there existed about 400,000 jobs in the national economy. Tr. 58.

## A.    The ALJ properly developed the record.

Plaintiff claims that the ALJ erred in failing to obtain a
consultative intelligence examination because there was evidence in
the record indicating the existence of a cognitive impairment.
Because a hearing on disability benefits is a non-adversarial
proceeding, the ALJ generally has an affirmative obligation to
develop the administrative record. Perez v. Chater, 77 F.3d 41, 47
(2d Cir. 1996); See also Echevarria v. Secretary of Health & Human
Servs., 685 F.2d 751, 755 (2d Cir.1982). This duty exists even when
the Plaintiff is represented by counsel. See Baker v. Bowen, 886
F.2d 289, 292 n. 1 (10th Cir.1989).

Where the record does not contain sufficient clinical
findings, laboratory tests, or a diagnosis or prognosis necessary
for a decision to be made, a consultative examination may be
warranted  at the discretion of the ALJ. 20 C.F.R. §416.919a. See

Hughes v. Apfel, 992 F.Supp. 243, 248 (W.D.N.Y.1997) (citing 20
C.F.R. §404.1517 (the SSDI equivalent to §416.917)). However,
consultative examination is unnecessary if the record contains
sufficient information on which to base the decision. See Serianni
v. Astrue, No. 6:07-CV-250, 2010 WL 786305, at *5, 2010 U.S. Dist.
LEXIS 17758, at *13 (N.D.N.Y Mar. 1, 2010); See also Beal v.
Chater, 1995 WL 819041, at *4 (W.D.N.Y.1995). An ALJ is not
obligated to order a consultative examination if the facts do not
warrant or suggest the need for such an examination. Cruz v.
Shalala, 1995 WL 441967, at *5 (S.D.N.Y.1995) . Where a plaintiff
suggests a possible mental impairment, the ALJ must assess whether
there is any evidence of work-related functional limitations
resulting from the possible mental impairment which have not been
adequately addressed in the record. See Haskins v. Comm'r of Soc.
Sec., 2008 WL 5113781, at *7, n. 5 (N.D.N.Y.2008).

Here, the record contains sufficient evidence regarding
Plaintiff's cognitive abilities. The record contains Plaintiff's
IEP which lists three sets of IQ tests from 2001, 2004 and 2007.
Tr. 162-63, 169-74. Plaintiff's school psychologist, Dr. Elizabeth
Perelli, who administered the tests, stated that Plaintiff's
"overall cognitive ability fell within the average range." Tr. 172.
The results of these comprehensive tests are consistent with the
opinion of Dr. Ransom, who classified Plaintiff as having "probable
borderline intellectual capacity." Dr. Ransom found her prognosis

was fair. Tr. 218. Because these sources provide sufficient evidence regarding the cognitive abilities of the Plaintiff from which the ALJ could base his decision, this Court finds that the ALJ did not err by failing to request an additional consultative intelligence exam.

**B.    The ALJ's Residual Functional Capacity finding is supported by substantial evidence.**

Plaintiff claims that the ALJ's RFC finding is not supported by substantial evidence. After considering the medical evidence in the record the ALJ found that Plaintiff retained the RFC for sedentary work as defined by 20 C.F.R. 416.967(a), except that "such work must be limited to simple, routine and repetitive tasks; have only occasional changes in the work setting with any changes being gradually introduced; require no interaction with the public and no more than occasional interaction with co-workers or supervisors; require no more than occasional use of the right lower extremity for pushing, pulling, or operation of foot controls; involve no climbing of ladders, ropes or scaffolds, no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, no concentrated exposure to temperature extremes, wetness, or humidity, and no exposure to excessive noise and environmental irritants; and allow for close proximity to a restroom facility." Tr. 14-15. The ALJ relied on

evaluations from consultative physicians Dr. Toor and Dr. Ransom, and treating physician Dr. Goodfellow, all of whom addressed the Plaintiff's symptoms and functional limitations.

Dr. Toor, whom the ALJ afforded significant weight, opined that Plaintiff's physical limitations would "interfere with her daily physical routine" and may limit her ability to engage in prolonged running or walking, in balancing, and in her ability to tolerate environmental irritants. Tr. 212-13. The ALJ took the limitations outlined by Dr. Toor into consideration in his RFC. Tr. 15. See 20 C.F.R. §416.967(a); SSR 83-10. Dr. Goodfellow, whom the ALJ gave limited weight, opined that the Plaintiff had no impairment-related functional limitations at all. Tr. 205. The ALJ decided to give limited weight to Dr. Goodfellow in order to afford the benefit of the doubt to the Plaintiff. Tr. 18. Dr. Ransom opined that Plaintiff would have moderate difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress, which is also reflected in the ALJ's RFC. Tr. 14-15. Based on this evidence, and for the reasons set forth below, this Court finds that the ALJ's RFC was supported by substantial evidence in the record.

1. <u>The ALJ adequately considered limitations stemming from Plaintiff's bladder and bowel incontinence.</u>

Plaintiff specifically argues that the ALJ failed to adequately consider limitations stemming from her bladder and bowel incontinence in his RFC determination. However, the RFC provides that Plaintiff must be allowed "close proximity to a restroom facility." Tr. 15. Although Plaintiff testified that she soils herself multiple times a week, Dr. Sulkes noted that she only catheterizes herself twice a day which could be contributing to her daytime wetness. Urology specialist Cheryl Kline encouraged Plaintiff to catheterize more frequently. Tr. 186-87. There is no evidence in the record suggesting that Plaintiff's self-catheterization cannot be done in public facilities and Plaintiff had no physical or medical limitations or accommodations at school as a result of her bladder and bowel issues, other than restroom privileges as needed. Tr. 163, 283. Furthermore, ultrasounds of Plaintiff's kidneys and bladder from May 2006, 2007 and 2008 were consistently normal. Tr. 16, 195, 200-01. Lastly, Dr. Goodfellow noted that Plaintiff's hydronephrosis, though a lifelong diagnosis, was stable and caused no physical limitations. Tr. 203-05.

Therefore, this Court finds that the ALJ adequately considered Plaintiff's bowel and incontinence issues in the RFC.

2.   The ALJ correctly considered the opinion of Dr. Goodfellow.

Plaintiff next contends that the ALJ erred in evaluating the opinion of her primary care physician Dr. Goodfellow by failing to contact her to clarify or update her medical statement. An ALJ is required to "recontact" a claimant's physician for additional information regarding plaintiff's impairments when the evidence from a claimant's treating physician is inadequate for the ALJ to determine whether the claimant is disabled. 20 C.F.R. §416.912(e)(1).[1] Where, however, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Crawley-Nunez v. Astrue, 08-CV-0295-A, 2009 WL 5171880, *6 (W.D.N.Y. Dec. 22, 2009) (citing Rosa v. Callahan, 168 F.3d 72, 79, n. 5 (2d Cir.1999)). See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the

_____

[1] Effective March 26, 2012, the Commissioner amended 20 C.F.R. §416.912 to remove the duty imposed on ALJs in former paragraph (d) to re-contact a disability claimant's treating physician under certain circumstances. The commissioner's directives as to how an ALJ will consider evidence are now found at 20 C.F.R. §416.920b. Here, however, the Court will apply the version in effect when the ALJ adjudicated Plaintiff's disability claim, §416.912(e).

record."); <u>Rebull v. Massanari</u>, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002) (medical record that does not support a treating physician's opinion does not necessarily contain gaps or deficiencies in the evidence which require recontact).

In this case, the record is replete with treatment notes from treating physicians Dr. Sulkes, Dr. Harris and Dr. Silberstein and consultative physicians Dr. Toor and Dr. Ransom, all opining on Plaintiff's impairments and her functional limitations.   The evidence from Plaintiff's treating sources and the consultative physicians is substantial evidence to support the ALJ's decision on Plaintiff's claim without needing to recontact Dr. Goodfellow. <u>See Rebull,</u> 240 F. Supp. 2d at 272; <u>See also</u> <u>Veino</u>, 312 F.3d at 588. To account for Dr. Goodfellow's opinion that Plaintiff was entirely without impairment-related functional limitations from the other physician's evaluations, the ALJ afforded Dr. Goodfellow limited weight in an attempt to afford the Plaintiff the benefit of any reasonable doubt. Tr. 18, 205. Accordingly, this Court finds that the ALJ did not err by failing to recontact Dr. Goodfellow.


   3.   <u>The Appeals Council did not err by failing to remand the case.</u>

Plaintiff further argues that the Appeals Council erred in failing to remand in light of receiving "new and material" evidence from Dr. Goodfellow. "If new and material evidence is submitted to

the Appeals Council, the Council will consider it 'only if it relates to the period on or before the date of the administrative law judge hearing decision.'" <u>Soto v. Astrue</u>, 09 CIV. 9862 HB, 2011 WL 1097392, *3 (S.D.N.Y. Mar. 23, 2011); 20 C.F.R. § 416.1476(b)(1). <u>See also</u> <u>Richardson v. Apfel</u>, 44 F. Supp. 2d 556, 562 (S.D.N.Y. 1999). To obtain a review of a submission of additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." <u>Sergenton v. Barnhart</u>, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing <u>Lisa v. Sec'y of Health & Human Servs.</u>, 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is considered "material" if it is "relevant to the claimant's condition for the time period for which benefits were denied." <u>Bergmann v. Apfel</u>, 207 F.3d 1065, 1069-70 (8th Cir.1999) (also finding that evidence must discuss more than conditions or deterioration which was present before the ALJ's decision); <u>See also</u> <u>Hangartner v. Shalala</u>, 865 F.Supp. 755, 759 (D.Utah 1994). In addition, there "must be a 'reasonable possibility that the new evidence would have changed the outcome of" the ALJ's decision "had it been before him." <u>Gamer v. Secretary of Health and Human Services</u>, 815 F.2d 1275, 1280 (9th Cir. 1987).

As the Commissioner notes, Dr. Goodfellow's February 2011 opinion was based, by her own admission, on her review of Plaintiff's self-reporting her symptoms and not on a more recent examination of Plaintiff and her impairments. Tr. 308. The letter contained no specific additional impairments or any account of major increases in frequency or severity of symptoms. In the letter, Dr. Goodfellow also draws conclusions on Plaintiff's employability which are left to the Commissioner to decide. <u>See</u> 20 C.F.R. §416.920 and §416.945. Not only is Dr. Goodfellow's letter unsupported by specific evidence that is not already in the record, it is also inconsistent with the rest of the record. Commissioner's Brief, at 19; Tr. 308. Accordingly, the Court finds the additional submission is not "material" and the AC did not err in finding that the information did not provide a basis for changing the ALJ's decision. Tr. 2.

    4.   <u>The ALJ properly applied the Psychiatric Review Technique</u>

Lastly, the Plaintiff argues the ALJ improperly evaluated her mental impairments by failing to apply the proper evaluation standard in his RFC. This claim is two-fold: first, Plaintiff argues that the ALJ failed to properly evaluate the "paragraph B" criteria by failing to adequately support his evaluation; and second, that the paragraph B analysis was improperly applied to

Steps 3, 4 and 5 of the sequential evaluation. Plaintiff's Brief, at 17; See 20 C.F.R. §416.920.

The ALJ relies heavily on the evidence in the record provided by consultative and non-examining physicians. The regulations state that state agency physicians are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §416.927(e)(2); See SSR 96-6p. Case law has expanded the regulations to say that "[s]tate agency physicians are as qualified [as] experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." Barringer v. Commissioner of Social Sec., 358 F.Supp.2d 67, 79 (citing Leach ex rel. Murray v. Barnhart, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004)).

The regulations provide that in order to evaluate the severity of a mental impairment, "we must follow a *special technique* at each level in the administrative review process." 20 C.F.R. §416.920a (emphasis added). As required in "paragraph B" of listings, there are four functional areas in which the ALJ should rate the degree of functional limitation of a claimant: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. 20 C.F.R. §416.920a(c)(2); See 20 C.F.R. §404, Subpt. P, App. 1, 12.00C. The regulations direct that the first three functional areas be

24

evaluated using a five-point scale: None, mild, moderate, marked, or extreme. The regulations require that the last area, episodes of decompensation, be evaluated using a four-point scale: none, one or two, three, four or more. 20 C.F.R. § 416.920a (c)(3). The findings from the "paragraph B" evaluation are then applied to Step 3 of the sequential evaluation to determine if a claimant is able to work. See 20 C.F.R. §416.920; See also SSR 96-8P, at *2.

The ALJ found that Plaintiff had no more than moderate restrictions in activities of daily living. In his discussion of this area, he referenced Plaintiff's testimony that she is independent in all aspects of self-care and that she is able to catheterize herself. Tr. 14, 32, 40. He also referenced Dr. Toor and Dr. Ransom's opinions which included Plaintiff's statements she watched television, shopped with her mother and socialized with friends. Tr. 14, 210, 216-17.

Next, the ALJ found that Plaintiff had moderate difficulty with social functioning. He first referenced Plaintiff's mother's testimony that Plaintiff spends a great deal of time in isolation and frequently fights with family members. Tr. 14, 48. The ALJ also referenced the evidence in the record that Plaintiff socializes normally. The ALJ references Plaintiff's statements to her doctors that she socializes with friends as well as evidence from Plaintiff's IEP, which stated in relevant part that Plaintiff has developed a peer group and that Plaintiff herself told the school

psychiatrist it was the aspect of school she liked best. Tr. 14, 163, 210, 216.

The ALJ next found the Plaintiff to have moderate difficulty in the area of concentration, persistence or pace. Tr. 14. The ALJ acknowledged Plaintiff's testimony that she "sometimes" has difficulty paying attention or concentrating, as well as Plaintiff's IEP which noted that Plaintiff had difficulty following through and completing tasks. Tr. 14, 39, 162. The ALJ also referenced the findings of consultative physician Dr. Ransom, who found that Plaintiff was able to maintain attention and concentration for simple tasks and classified her attention deficit as moderate. Tr. 14, 218. He also referenced state agency medical consultant Dr. Hochber who determined that claimant could sustain a normal workday and workweek and maintain a consistent pace to do at least unskilled work. Tr. 14, 248.

Lastly, the ALJ found the record to show no episodes of decompensation. He stated that he found no evidence in the record to establish a single episode in which claimant suffered increased symptoms with loss of adaptive functioning that lasted two weeks or more. Tr. 14.

After going through the steps of the Special Technique as required by the regulations to evaluate "paragraph B" criteria, the ALJ determined that "[b]ecause the Plaintiff's mental impairments do not cause at least two 'marked' limitations or one 'marked

limitation and 'repeated' episodes of decompensation, the 'paragraph B' criteria are not satisfied." Tr. 14. <u>See</u> 20 C.F.R Pt. 404, Subpt. P, App. 1, 12.00B. After reviewing the record, this Court finds that the ALJ's evaluation of each area of "paragraph B" criteria was substantially supported by the record.

The Plaintiff also argues that the ALJ did not supply a finding as to Plaintiff's mental limitations. Plaintiff's Brief, at 16-18. The results of the ALJ's "paragraph B" evaluation, however, provide the basis for the ALJ's RFC determination that Plaintiff was limited to "simple, routine, and repetitive tasks" and that she could "have only occasional changes in the work setting with any changes being gradually introduced." Further, the job could require "no interaction with the public and no more than occasional interaction with co-workers or supervisors..." Tr. 15. Contrary to the Plaintiff's argument, this RFC determination includes functional limitations contained in the areas of activities considered to be essential to the ability to work and as such is sufficient and substantially supported by the record.

Accordingly, this Court finds that the ALJ's RFC determination was properly decided and supported by substantial evidence in the record and the Plaintiff's contentions are without merit.

**C.    The ALJ correctly evaluated the Plaintiff's credibility.**

Plaintiff argues that the ALJ erred in his credibility determination. Once an ALJ has determined that an applicant suffers from a medically determinable impairment that could reasonably be expected to produce a Plaintiff's pain and other symptoms, he is required to evaluate the intensity of these symptoms by considering the following factors: (i) daily activities; (ii) the location, duration, frequency, and intensity of your pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medications taken to alleviate this pain or these symptoms; (v) other treatment used for relief of these symptoms; (vi) any other measures used to relieve the pain or symptoms; (vii)  other factors regarding your restrictions or limitations due to pain or symptoms.  20 C.F.R. § 416.929(c)(3); SSR 96-7p.  If the ALJ finds the Plaintiff's testimony not to be credible based on these factors, then the ALJ must give a detailed explanation explaining the ALJ's reasoning behind his conclusion.  See Marshall v. Heckler, 731 F.2d 555 (8th Cir. 1984).

In his decision, the ALJ discussed the Plaintiff's testimony regarding her ability to physically handle work, including her back pain and stiffness and how they limit her ability to walk or stand for prolonged periods, her bladder and bowel control problems, headaches, knee problems and asthma. Tr. 15-18. The ALJ determined

that Plaintiff's "statements are not credible to the extent that they are inconsistent with the . . . residual functional capacity assessment," which was based on the consultative examination by Dr. Toor as well as the entire medical record provided by the Plaintiff, including that of her primary care physician.  Tr. 15-18.

On several occasions, the Plaintiff's testimony conflicts with what she reported to physicians and on her claim of disability. As the ALJ cited, she reported to Dr. Toor and Dr. Ransom that she is independent in all aspects of personal care, including doing her own laundry and shopping and socializing with others. Tr. 17, 210, 217. The ALJ also notes that as recently as December 2010, Plaintiff expressed a desire to pursue a college education but her only obstacle is the lack of financial resources. Tr. 17, 262. These contradictory reports, as well as others, provided the basis for the ALJ's credibility determination.

The Plaintiff also argues that the ALJ failed to discuss her medications and special education classes in his opinion. An administrative judge is not required to explicitly name and discuss every piece of evidence in the record. See Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1983); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981); Barringer v. Commissioner of Social Sec., 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005). Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision,

[the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Barringer, 358 F. Supp. 2d at 79 (citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir.1983), 722 F.2d at 1040. Moreover, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered." Id. (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). The ALJ's decision contains myriad references to the medical sources from the record. Thus, a conclusion that the ALJ did not consider all of the relevant evidence is unwarranted.

The ALJ did not completely discount Plaintiff's testimony, only that which conflicted with the RFC. Ultimately, this Court finds that the ALJ properly considered the testimony of the Plaintiff in his finding that the Plaintiff is not disabled under the Act.

**D.   The testimony of the Vocational Expert was supported by substantial evidence in the record.**

Plaintiff argues that the ALJ provided the VE with an incomplete hypothetical that omitted all of Plaintiff's alleged limitations. In questioning a vocational expert, a hypothetical must precisely and comprehensively set out every physical and mental impairment of the Plaintiff that the ALJ accepts as true and

significant.  <u>Varley v. Sec'y of Health & Human Services</u>, 820 F.2d 777, 779 (6th Cir. 1987). Plaintiff contends the hypothetical was incomplete because the ALJ erred in assessing her RFC and her credibility. Plaintiff's Brief, at 21. However, the hypothetical included Plaintiff's physical and mental impairments, and the limitations that result from those impairments. Tr. 57. Because the hypothetical was consistent with the ALJ's RFC finding, and the RFC, as discussed above, was supported by substantial evidence in the record, this Court finds that the ALJ properly relied on the opinion of the VE.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.[2]  Therefore, I grant the Commissioner's motion for judgment on the pleadings.  The Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 19, 2012

---

[2] The Court notes that while several of Plaintiff's arguments were meritless and merely cumulative, the Court addressed each argument separately to adequately explain to the Plaintiff the reasons for its decision.

31